## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

BACHITAR SINGH,

     Petitioner,

v.                                     Civ. No. 25-1110 JB/KK

KRISTI NOEM, *et al.*,

     Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

Before the Court is Petitioner Bachitar Singh's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) ("Motion"), filed November 7, 2025. United States District Judge James O. Browning referred this case to me under 28 U.S.C. § 636(b) and *Virginia Beach Federal Savings & Loan Association v. Wood*, 901 F.2d 849 (10th Cir. 1990), "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 3 at 1.) Having reviewed the parties' submissions, the record, and the relevant law, having heard the arguments of counsel at a hearing on November 20, 2025, and being otherwise sufficiently advised, I RECOMMEND that the Court GRANT the Motion and issue a temporary restraining order and preliminary injunction requiring all Respondents to release Petitioner immediately. Alternatively, I RECOMMEND that the Court issue a temporary restraining order and preliminary injunction requiring Respondents to hold a bond hearing within five (5) days of entry of the Court's order, at which they shall either show changed circumstances rendering Petitioner a danger or flight risk or immediately release him.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Petitioner is a citizen of India who entered the United States without inspection on or about September 15, 2023. (*Id.* at 12 ¶ 38.) Shortly after his arrival, United States immigration officials arrested and detained him and served him with a Notice to Appear before an Immigration Judge, charging that he was inadmissible because he was present in the United States without admission or parole. (*Id.*) The following day, on September 16, 2023, the United States Department of Homeland Security ("DHS") released Petitioner on his own recognizance "[i]n accordance with section 236 of the Immigration and Nationality Act," *i.e.*, 8 U.S.C. § 1226.[2] (*Id.*; Doc. 1-2 at 6.) Petitioner has resided in the United States since his release. (Doc. 1 at 12 ¶ 39.) He has no criminal history and has fully complied with all of the conditions of his release. (*Id.* at 12 ¶ 38.) On March 19, 2024, Petitioner timely filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* at 12-13 ¶ 39.) Effective September 17, 2024, the United States granted Petitioner an Employment Authorization valid until September 16, 2029. (Doc. 1-2 at 8.) He subsequently obtained a commercial driver's license and employment as a commercial truck driver. (Doc. 1 at 12 ¶ 39) His asylum application remains pending, with his next master calendar hearing set for December 9, 2025. (*Id.* at 13 ¶ 39.)

On or about September 4, 2025, while he was employed driving a commercial vehicle, Petitioner traveled through a U.S. Border Patrol checkpoint in New Mexico, within the interior of the United States. (*Id.* at 13 ¶ 40.) At the checkpoint, immigration officials re-detained Petitioner despite the absence of any material change in circumstances that would have rendered him a danger

---

[1] The following facts are taken from Petitioner's Verified Petition for Writ of Habeas Corpus (Doc. 1) ("Petition"). At the hearing on Petitioner's Motion, Respondents' counsel was given the opportunity to contest the facts asserted by Petitioner and he indicated that he did not contest them. Thus, the facts as asserted by Petitioner are undisputed.

[2] *See* https://www.uscis.gov/laws-and-policy/legislation/immigration-and-nationality-act (listing sections of the Immigration and Nationality Act and where they are codified in the United States Code) (last accessed Nov. 19, 2025).

or flight risk. (*Id.*) He has been held without bond since that time and is currently detained at the Otero County Processing Center in Chaparral, New Mexico. (*Id.* at 13 ¶ 41.)

On November 7, 2025, Petitioner filed a Verified Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, asking the Court to: (1) grant a writ of habeas corpus and declaratory relief holding that Petitioner's detention is unlawful and unconstitutional; (2) order Respondents to release Petitioner immediately or, alternatively, to provide him with a bond hearing under 8 U.S.C. § 1226(a) within five (5) days of the Court's order, at which the DHS bears the burden to justify Petitioner's re-detention by showing, by clear and convincing evidence, materially changed circumstances rendering Petitioner a danger or flight risk; (3) order Respondents to refrain from transferring Petitioner to any facility outside the District of New Mexico while the writ is pending; and, (4) award Petitioner his reasonable attorney's fees, expenses, and costs. (Doc. 1 at 17-18.)

Contemporaneously with his Petition, Petitioner filed the Motion presently before the Court, seeking a temporary restraining order ("TRO") and preliminary injunction. (Doc. 2.) Petitioner's counsel certified that they served the Petition and Motion on the United States Attorney's Office for the District of New Mexico by certified mail, return receipt requested, on November 7, 2025. (*Id.* at 20; Doc. 11-1 at 1, 4.) The United States Attorney's Office received the Petition and Motion on November 15, 2025. (Doc. 11-1 at 1, 4.)

On November 13, 2025, the Court ordered Petitioner to serve all Respondents with the Petition pursuant to Federal Rule of Civil Procedure 4 by November 14, 2025. (Doc. 4 at 2.) The Court further ordered Respondents to respond to the Petition and show cause why it should not be granted within three (3) days of receipt of service, noting that Respondents could for good cause move for additional time not to exceed twenty (20) days. (*Id.*) The Court indicated that Petitioner's

reply will be due within three (3) days, and that it will set a hearing within five (5) days, after Respondents' response is filed. (*Id.* at 2-3.) Petitioner's counsel served the Petition and Motion on all five Respondents via certified mail, return receipt requested, on November 13, 2025. (Doc. 11-1 at 1.)

Also on November 13, 2025, the Court set a hearing on the Motion for November 20, 2025. (Doc. 5 at 2.) The Court ordered Petitioner to serve the Motion on Respondents and directed the Clerk's Office to provide a courtesy copy of the Motion and the Court's Order to the Civil Division Chief of the United States Attorney's Office for the District of New Mexico. (*Id.*) The Court held a hearing on the Motion on November 20, 2025, at which counsel for Petitioner and for Respondents Noem, Bondi, Lyons, and De Anda-Ybarra appeared. At the hearing, counsel for the listed Respondents indicated, among other things, that his clients do not contest the factual allegations raised by Petitioner, and that he does not represent Respondent Castro but believes the defenses applicable to his clients apply equally to her.

For brevity and except as specifically noted otherwise, the term "Respondents" as used herein refers to those Respondents whose counsel appeared at the hearing, *i.e.*, Respondents Noem, Bondi, Lyons, and De Anda-Ybarra.

## II. ANALYSIS

In his Motion, Petitioner argues that he is entitled to a TRO and preliminary injunction because: (1) he is substantially likely to succeed on the merits of his claims; (2) he will suffer irreparable harm if the requested TRO and preliminary injunction do not issue; (3) the threatened injury if the TRO and preliminary injunction are denied outweighs any harm that will result if they are granted; and, (4) granting the TRO and preliminary injunction is in the public interest. (Doc. 2 at 6.) Accordingly, Petitioner asks the Court to issue a TRO and preliminary injunction prohibiting

Respondents from continuing to detain him and ordering that he be released pending resolution of his Petition or, alternatively, that Respondents provide him with a bond hearing "without delay" at which the DHS bears the burden to show by clear and convincing evidence that changed circumstances justify his re-detention. (*Id.* at 19.)

To be entitled to a TRO or preliminary injunction, a petitioner must establish that: (1) he is substantially likely to succeed on the merits of his claim; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the threatened injury to the petitioner if preliminary relief is denied outweighs any threatened injury to the opposing party if it is granted; and, (4) the preliminary relief is in the public interest.[3] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019); *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1252 (10th Cir. 2016). "The likelihood-of-success and irreparable-harm factors are 'the most critical.'" *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1139 (D.N.M. 2018) (Browning, J.) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)).

The Tenth Circuit has recognized three types of disfavored preliminary injunctions, *i.e.*, preliminary injunctions that (1) "mandate[] action (rather than prohibiting it)"; (2) "change[] the status quo,"[4] or (3) "grant[] all the relief that the moving party could expect from a trial win." *Free the Nipple-Fort Collins*, 916 F.3d at 797. "To get a disfavored injunction, the moving party faces

---

[3] "The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order. The primary differences between a TRO and a preliminary injunction are that a TRO may issue without notice to the opposing party and that TROs are limited in duration." *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) (Browning, J.) (citations omitted). All Respondents received notice (Doc. 11) and while the federal Respondents appeared at the hearing through counsel, Warden Castro opted not to appear.

[4] The "status quo" is "the last peaceable uncontested status existing between the parties before the dispute developed." *Free the Nipple-Fort Collins*, 916 F.3d at 798 n.3.

a heavier burden on the likelihood-of-success-on-the-merits and the balance-of-harms factors: She must make a strong showing that these tilt in her favor." *Id.* (quotation marks omitted).

I address each element Petitioner must show to be entitled to a TRO and preliminary injunction below. In so doing, I assume without deciding that Petitioner is seeking disfavored preliminary relief, because even if he is, he has made the strong showing required to obtain it.[5]

## A.    Petitioner has made a strong showing that he is likely to succeed on the merits of his claims.

In his Petition, Petitioner asserts three claims. First, he claims that he is being detained contrary to federal law because he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and has been re-detained pursuant to 8 U.S.C. § 1226(a) even though there have been no materially changed circumstances rendering him a danger or a flight risk. (Doc. 1 at 13-15.) Second, he claims that his re-detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution because he has a protected liberty interest in remaining free from civil detention and he has been deprived of that interest without constitutionally adequate process. (*Id.* at 15-16.) Third, he claims that he is being detained contrary to the Federal Respondents' own regulations in violation of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). (Doc. 1 at 16-17.)

Petitioner has made a strong showing that he is substantially likely to succeed on at least the first two claims in his Petition. With respect to his first claim, *i.e.*, that his re-detention without a bond hearing violates federal law, two relevant statutory provisions govern whether a non-citizen is subject to mandatory detention or is eligible for a bond hearing. The first provision, 8 U.S.C. §

---

[5] However, it is at least questionable whether the requested preliminary relief is disfavored, because it can be read to merely require Respondents to return matters to the status quo ante, *i.e.*, the status quo at the moment before they re-detained Petitioner. *Singh v. Andrews*, Civ. No. 25-801, 2025 WL 1918679, at *5 (E.D. Cal. July 11, 2025) (collecting cases).

1225(b), provides in pertinent part that, "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an *alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A) (emphases added). Section 1225 defines the term "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States … whether or not at a designated port of arrival," but does not define the term "alien seeking admission." 8 U.S.C. § 1225(a) (parenthesis omitted).

    The second provision, 8 U.S.C. § 1226(a), provides that

> [o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--(1) may continue to detain the arrested alien; and (2) may release the alien on … bond … or … conditional parole.

8 U.S.C. § 1226(a). To be released under Section 1226(a), a non-citizen "must demonstrate to the satisfaction of the [arresting immigration] officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). In addition, the non-citizen must not fall into any of the categories listed in "subsection (c)," which provides for the mandatory detention of certain "criminal aliens." 8 U.S.C. § 1226(c). In January 2025, the Laken Riley Act ("LRA") amended subsection (c) to add a new category of non-citizens ineligible for release under Section 1226(a). LRA, Pub. L. No. 119-1 (Jan. 29, 2025). This new category includes non-citizens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes.[6] 8 U.S.C. §§ 1182(a)(6)(A)(i), 1226(c)(1)(E).

---

[6] The crimes enumerated in Section 1226(c)(1)(E) are "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer … or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E).

The Supreme Court discussed Sections 1225(b) and 1226 and the classes of individuals to whom they apply in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). The Court explained that Section 1225(b) "applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Id.* at 297. In contrast, the Court explained that Section 1226 "applies to aliens already present in the United States." *Id.* at 303. The Court further noted that "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also "permits the Attorney General to release those aliens on bond." *Id.*

It is undisputed that when Petitioner was initially detained and released in September 2023, it was under 8 U.S.C. § 1226(a). Indeed, the Order of Release on Recognizance attached to the Petition specifically states that Petitioner was being released "[i]n accordance with Section 236 of the Immigration and Nationality Act"—*i.e.*, 8 U.S.C. § 1226. (Doc. 1-2 at 6.) Consistently, the Notice to Appear requiring Petitioner to appear for removal proceedings at a later date indicated that he was "an alien present in the United States who has not been admitted or paroled," rather than "an arriving alien." (*Id.* at 2.)

Moreover, logically, Petitioner had to have been detained and released under Section 1226(a) rather than Section 1225(b)(2)(A), because Section 1226(a) allows for a non-citizen to be released on his own recognizance, *i.e.*, on "conditional parole," pending removal proceedings, while Section 1225(b)(2)(A) provides that an alien seeking admission "shall" be detained unless an examining immigration officer determines that he is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §§ 1225(b)(2)(A), 1226(a). And here, because Petitioner was placed in removal proceedings, it cannot reasonably be disputed that no examining immigration officer found Petitioner clearly and beyond a doubt entitled to be admitted prior to his release. It follows

that Section 1226(a) is also the statutory provision that should be applied to Petitioner's re-detention in September 2025. Further, because Petitioner was initially released pursuant to Section 1226(a), he necessarily demonstrated to the arresting immigration officer's satisfaction that he was not a flight risk or a danger to persons or property. 8 C.F.R. § 236.1(c)(8); (*see also* Doc. 1 at 12 ¶ 13.)

At the hearing on Petitioner's Motion, Respondents' counsel argued that Section 1225(b)(2)(A) applies to Petitioner, because all non-citizens who have not been lawfully admitted to the United States are "applicants for admission" even if they are already present and have been residing in the United States for years. However, Respondents' argument is without merit for the following six reasons. First, by the time he was re-detained, Petitioner had been residing in the United States for two years, and was thus an "alien[] already present in the United States," rather than an "alien[] seeking entry." *Jennings*, 583 U.S. at 297, 303. Under *Jennings*, this means that Section 1226, rather than Section 1225(b), applies.

Second, applying Section 1225(b)(2)(A) to persons like Petitioner would nullify the portion of the LRA that amends Section 1226 to require mandatory detention for non-citizens who (1) are deemed inadmissible because they are "present in the United States without being admitted or paroled" and (2) have been arrested for, charged with, or convicted of certain crimes. 8 U.S.C. §§ 1182(a)(6)(A)(1), 1226(c)(1)(E). If, as Respondents claim, Section 1225(b)(2)(A) required mandatory detention for *all* non-citizens deemed inadmissible because they are present in the United States without being admitted or paroled, then Congress would have had no reason to amend Section 1226 to require mandatory detention for non-citizens who not only fall into that category but also have been convicted of enumerated crimes. *See, e.g.*, *Sampiao v. Hyde*, — F. Supp. 3d —, 2025 WL 2607924, at *8 (D. Mass. Sept. 9, 2025); *Loa Caballero v. Baltazar*, Civ.

No. 25- 3120, 2025 WL 2977650, at *7 (D. Colo. Oct. 22, 2025). Respondents' position is therefore contrary to the presumption that, when Congress amends a statute, "it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995), *abrogation on other grounds recognized by Riley v. Bondi*, 606 U.S. 259, 276 (2025).

Third, Respondents' position would render the phrase "alien seeking admission" in Section 1225(b)(2)(A) "mere surplusage." *Lopez Benitez v. Francis*, — F. Supp. 3d —, 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025). If Section 1225(b)(2)(A) were to apply to *all* "applicants for admission," *i.e.*, those who "arrive[] in the United States *and* those already "present in the United States who ha[ve] not been admitted," 8 U.S.C. § 1225(a)(1), then the statutory language limiting Section 1225(b)(2)(A) to applicants for admission who are also "alien[s] seeking admission" would be a nullity. 8 U.S.C. § 1225(b)(2)(A). "By reading a phrase out of the statute, Respondents' interpretation of § 1225 clearly violates the rule against surplusage." *Lopez Benitez*, 2025 WL 2371588, at *6; *see United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning.") (quotation marks omitted); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[A] statute ought … to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

Fourth and relatedly, Respondents' argument improperly equates the terms "applicant for admission" and "alien seeking admission" in Section 1225(b)(2)(A). Treating these phrases synonymously would be contrary to the presumption that Congress intended different words or phrases to be accorded different meanings. *Lopez Benitez*, 2025 WL 2371588, at *6. Moreover, Respondents are correct that a non-citizen who, like Petitioner, has never lawfully entered the United States but has been present here for a substantial period of time is included in the statutory definition of the term "applicant for admission." 8 U.S.C. § 1225(a)(1). But individuals like

Petitioner do not fall within the plain meaning of the phrase "alien seeking admission," because "admission" is defined as lawful "entry" into the United States, 8 U.S.C. § 1101(a)(13)(A), and such individuals "ha[ve] already entered the country." *Lopez Benitez*, 2025 WL 2371588, at *6 (quotation marks omitted). What individuals like Petitioner are seeking—in his case, via an application for asylum—is not lawful entry into the United States but rather "a lawful means of remaining" here. *Id.* at *7.

Fifth, Respondents' position would expand Section 1225(b)(2)(A)'s reach "far beyond how it has been enforced historically, potentially subjecting millions more undocumented immigrants to mandatory detention, while simultaneously narrowing [Section] 1226(a) such that it would have extremely limited … application." *Id.* at *8. "[T]he line historically drawn between" Sections 1225(b)(2)(A) and 1226(a)—including by the DHS—and which "mak[es] sense of their text and the overall statutory scheme, is that [S]ection 1225 governs detention of non-citizens 'seeking admission into the country,' whereas [S]ection 1226 governs detention of non-citizens 'already in the country.'" *Id.* Respondents have not proffered any sufficiently persuasive reason to justify the radical shift they urge in the interpretation of the two statutes.

Sixth and finally, as Respondents' counsel admitted, the vast majority of district courts to have considered the issue have held that Section 1226(a), rather than Section 1225(b)(2)(A), applies to non-citizens who did not lawfully enter the United States but who have been present in the United States for a significant period of time before the challenged detention.[7] *See, e.g., Salazar v. Dedos*, Civ. No. 25-835, 2025 WL 2676729, at *4 (D.N.M. Sept. 17, 2025); *see also, e.g., Loa Caballero*, 2025 WL 2977650, at *4-*7; *Buenrostro-Mendez v. Bondi*, Civ. No. 25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025); *Sampiao*, 2025 WL 2607924, at *7-*8; *Mosqueda v.*

_____

[7] The parties' counsel have not identified, and I have not located, any federal appellate authority addressing this issue to date.

*Noem*, Civ. No. 25-2304, 2025 WL 2591530, at *4-*5 (C.D. Cal. Sept. 8, 2025). Of particular note here, courts have reached this conclusion in habeas cases involving non-citizens who, like Petitioner, were apprehended and released under Section 1226(a) years ago but have recently been re-detained without a bond hearing. *See, e.g., Romero v. Hyde*, — F. Supp. 3d —, 2025 WL 2403827, at *9-*13 (D. Mass. Aug. 19, 2025); *Jimenez v. FCI Berlin, Warden*, Civ. No. 25-326, 2025 WL 2639390, at *7-*10 (D.N.H. Sept. 8, 2025); *Lopez Benitez*, 2025 WL 2371588, at *5-*9; *Rosado v. Figueroa*, Civ. No. 25-2157, 2025 WL 2337099, at *8-*11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, Civ. No. 25-2157, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025).

In taking a contrary position, Respondents rely on *In the Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). In *Yajure Hurtado*, the Board of Immigration Appeals ("BIA") concluded that non-citizens apprehended after already entering the United States are subject to mandatory detention because they remain "applicants for admission" within the meaning of Section 1225(b). *Id.* at 228. The BIA reasoned that "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an admission," nor does "being arrested pursuant to a warrant and placed into removal proceedings." *Id.* (quotation marks omitted). According to the BIA, to hold otherwise would reward non-citizens for evading apprehension and punish non-citizens who present themselves at ports of entry. *Id.*

Decisions of the BIA are not binding authority on the Court. The Supreme Court recently directed district courts to "exercise independent judgment in determining the meaning of statutory provisions" and "not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 413 (2024); *see also Sampiao*, 2025 WL 2607924, at *8 n.11. The BIA's conclusion conflicts with the Supreme Court's reasoning

12

in *Jennings* that Section 1226 is the statutory provision that applies to non-citizens already residing in the United States, 583 U.S. at 303, and numerous other district courts have explicitly rejected *Yajure Hurtado* for this reason. *See, e.g., Martinez-Elvir v. Olson,* — F. Supp. 3d —, 2025 WL 3006772, at *10 (W.D. Ky. Oct. 27, 2025); *Sampiao,* 2025 WL 2607924, at *8 n.11; *Mendoza Gutierrez v. Baltasar*, Civ. No. 25-2720, 2025 WL 2962908, at *1 (D. Colo. Oct. 17, 2025). In addition, *Yajure Hurtado* fails to satisfactorily address the five other reasons discussed above for applying Section 1226 to non-citizens already present in the United States. I therefore recommend that the Court reject its holding.

For all of the reasons just discussed, Petitioner has made a strong showing that he is likely to succeed in his first claim for relief, *i.e.*, that he has been arrested and re-detained under 8 U.S.C. § 1226(a) rather than 8 U.S.C. § 1225(b)(2)(A) and is therefore entitled to a bond hearing pursuant to Section 1226(a).

For his second claim, Petitioner asserts that his re-detention without a bond hearing or materially changed circumstances violates his due process rights. (Doc. 1 at 15-16.) As a preliminary matter, I note that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Fifth Amendment's Due Process Clause thus applies to Petitioner, a non-citizen who has undisputedly entered the United States and been present here for more than two years. (Doc. 1 at 4 ¶ 4; Doc. 1-2 at 2.)

Courts analyze due process claims in two steps. *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). The first step asks whether the government deprived the claimant of a protected liberty or property interest; and, if so, the second asks whether the procedural safeguards the government provided to the claimant were constitutionally adequate. *See id.*

Here, as to the first step, there is a substantial likelihood that Petitioner will be able to establish that he has a protected liberty interest in his continued conditional release from immigration detention. Courts have resolved the question of whether a plaintiff's conditional release from custody rises to the level of a protected liberty interest by comparing the release at issue to the plaintiff's liberty interest in continued parole discussed in *Morrissey v. Brewer*, 408 U.S. 471 (1972); *see, e.g., Young v. Harper*, 520 U.S. 143, 148-52 (1997); *González-Fuentes v. Molina*, 607 F.3d 864, 886-90 (1st Cir. 2010); *Hurd v. District of Columbia*, 864 F.3d 671, 682-84 (D.C. Cir. 2017). In *Morrissey*, the Court observed that a parolee's "condition is very different from that of confinement in a prison." *Morrissey*, 408 U.S. at 482. "The liberty of a parolee enables him to do a wide range of things" not open to a prisoner. *Id.* For example, "[s]ubject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* The Court therefore concluded that a parolee's "liberty is valuable and must be seen as within the protection" of due process. *Id.*; *see also Young*, 520 U.S. at 148 (holding that petitioner had a protected liberty interest in continued release on "preparole" where "[h]e kept his own residence; he sought, obtained, and maintained a job; and he lived a life generally free of the incidents of imprisonment").

A number of district courts have extended this reasoning to the immigration context and have held that, once released from immigration detention, non-citizens acquire "a protectable liberty interest in remaining out of custody on bond." *Lopez-Arevelo v. Ripa*, — F. Supp. 3d —, 2025 WL 2691828, at *11 (W.D. Tex. Sept. 22, 2025); *Diaz v. Kaiser*, Civ. No. 25-5071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *see also, e.g., G.S. v. Bostock*, Civ. No. 25-1255, 2025 WL 3014274, at *7 (W.D. Wash. Oct. 8, 2025), *report and recommendation adopted*, Civ. No. 25-1255, 2025 WL 3014035 (W.D. Wash. Oct. 28, 2025) ("Just as people on preparole, parole, and

probation status have a liberty interest, so too does a noncitizen released from immigration detention have a liberty interest in remaining out of custody on bond.") (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019)) (brackets omitted); *M.S.L. v. Bostock*, Civ. No. 25-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (same); *Rosado*, 2025 WL 2337099, at *12 (same).

Having found a substantial likelihood that Petitioner can establish a protected liberty interest, I must next determine whether there is also a substantial likelihood he can establish that Respondents have deprived him of that interest without constitutionally adequate procedural safeguards. *See Morrissey*, 408 U.S. at 481 ("Once it is determined that due process applies, the question remains what process is due."). To do so, I consider the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) "the private interest that will be affected by the official action," (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.* at 335.

Regarding the first *Mathews* factor, it is highly likely that Petitioner can show a significant private interest in remaining free from detention after being released on his own recognizance. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. And Petitioner's interest in freedom is particularly weighty because he has spent two years out of custody, during which he obtained a commercial driver's license and secured employment as a commercial truck driver.

Regarding the second *Mathews* factor, it is also highly likely that Petitioner can show a significant risk of erroneous deprivation. Under 8 U.S.C. § 1226(b), the DHS has the authority to revoke a non-citizen's release "at any time." However, as many courts have noted, the BIA has long recognized a limitation on this authority, requiring a material change in circumstances before it can be exercised. *See, e.g., Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (citing *In re Sugay*, 17 I & N Dec. 637 (B.I.A. 1981)); *Ortega*, 415 F. Supp. 3d at 968 (same); *Lesic v. Larose*, Civ. No. 25-2746, 2025 WL 3158675, at *2 (S.D. Cal. Nov. 12, 2025) (same); *Y.M.M. v. Wamsley*, Civ. No. 25-2075, 2025 WL 3101782, at *2 (W.D. Wash. Nov. 6, 2025) (same); *Chogllo Chafla v. Scott*, Civ. No. 25-437, 2025 WL 2688541, at *10 (D. Me. Sept. 22, 2025) (same); *Dos Santos v. Noem*, Civ. No. 25-12052, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025) (same); *Rosado*, 2025 WL 2337099, at *12 (same). Relying on this limitation, courts have required "a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight" before the DHS may revoke his release. *Y.M.M.*, 2025 WL 3101782, at *2 (quotation marks omitted). In other words, "[t]he law requires a change in relevant facts, not just a change in [the government's] attitude." *Valdez v. Joyce*, — F. Supp. 3d —, 2025 WL 1707737, at *3 n.6 (S.D.N.Y. June 18, 2025); *Singh v. Andrews*, Civ. No. 25-801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025).

Here, it is undisputed that Petitioner was re-detained after two years' release on his own recognizance without a bond hearing or any other procedural safeguards to assess whether there had been any change in relevant facts. (Doc. 1 at 12-13 ¶¶ 38-41.) It is also undisputed that in fact there has been no such change, and that Petitioner has no criminal record, has been gainfully employed with the federal government's authorization, and has complied with all of the terms of his release. (*Id.*) He has thus made a strong showing that he has been and continues to be

erroneously deprived of his protected liberty interest in remaining released on his own recognizance and that a bond hearing or immediate release is essential to remedy the deprivation.

Finally, regarding the third *Mathews* factor, it is highly likely Petitioner can show that the government's interest in re-detaining him without a hearing is low. Petitioner is neither a danger nor a flight risk, has no criminal record, has been gainfully employed, has complied with all of the conditions of his release, and has a pending asylum petition. (*Id.*) Detaining him therefore appears to serve no valid purpose—a fact his initial release confirms. In addition, pre- or post-detention hearings are relatively routine and do not impose a heavy burden on the government. *See, e.g.*, *Trejo v. Warden of ERO El Paso E. Montana*, — F. Supp. 3d —, Civ. No. 25-401, 2025 WL 2992187, at *10 (W.D. Tex. Oct. 24, 2025) (holding that cost of providing bond determination to non-citizen re-detained after release "cannot be terribly burdensome, given that the Government routinely conducts bond hearings"). For all of the above reasons, Petitioner has made a strong showing that he will succeed on his claim that Respondents violated his Fifth Amendment rights by re-detaining him without constitutionally adequate process.

### B.    Petitioner has made a strong showing that he will face irreparable injury in the absence of preliminary relief.

Petitioner has also made a strong showing that he will face irreparable injury in the absence of preliminary relief. As the Tenth Circuit has explained, "[w]hat makes an injury 'irreparable' is the inadequacy of, and the difficulty of calculating, a monetary remedy after a full trial," and any deprivation of an individual constitutional right "fits that bill." *Free the Nipple-Fort Collins*, 916 F.3d at 806; *see also, e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Singh*, 2025 WL 1918679, at *9 ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.") (quotation marks omitted). Having shown a

substantial likelihood that he will prevail on his due process claim, Petitioner has also established that he faces irreparable injury from the likely violation of his constitutional rights and "need show no further irreparable harm." *Free the Nipple-Fort Collins*, 916 F.3d at 806.

Moreover, the harm inflicted by the likely unlawful and unconstitutional conduct at issue here is particularly grave. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. And as long as Petitioner remains detained, he can no longer be "gainfully employed," be "with family and friends," "form … other enduring attachments," or "live[] a life generally free of the incidents of imprisonment." *Young*, 520 U.S. at 148; *Morrissey*, 408 U.S. at 482. Any monetary remedy for the loss of these profound but inchoate freedoms would be inadequate and very difficult to quantify.

### C. Petitioner has made a strong showing that the balance of equities and the public interest favor issuing the requested preliminary relief.

Finally, Petitioner has made a strong showing that the balance of equities and the public interest favor issuing the requested preliminary relief. The likely burden Respondents would bear if the Court orders a bond hearing or immediate release is minimal compared to the weighty liberty interests at stake for Petitioner as months pass while he sits in detention. While the government unquestionably has an interest in ensuring that Petitioner appears for his removal proceedings, the undisputed record shows that detention is unnecessary to protect this interest—the DHS has already determined that Petitioner is neither a danger nor a flight risk; he has ties to the community; and, perhaps most critically, for two years he has complied with all of the conditions of his release. (Doc. 1 at 12-13 ¶¶ 38-39.) In addition, pre- or post-detention hearings are relatively routine and do not impose a heavy burden on the government. *Trejo*, 2025 WL 2992187, at *10. "Faced with a choice between minimally costly procedures and preventable human suffering, … the balance of

18

hardships tips decidedly in [P]etitioner's favor." *Singh*, 2025 WL 1918679, at *9 (quotation marks and brackets omitted).

The public interest likewise weighs in Petitioner's favor. Even if Respondents were to ultimately determine that Petitioner's detention is proper under Section 1226(a), requiring them to hold a bond hearing would still promote the public interest because "[t]he public has a strong interest in upholding procedural protections against unlawful detention." *Diaz*, 2025 WL 1676854, at *3 (brackets omitted). And if, as seems clear, that Petitioner's detention is *not* legally or constitutionally justified, then it would manifestly promote the public interest to require Respondents to release him, either immediately or after a bond hearing. Not only would this save federal taxpayers from continuing to bear the expense of his detention, but also "it is always in the public interest to prevent the violation of a party's constitutional rights." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Singh*, 2025 WL 1918679, at *9.

> **D.    The Court should require Respondents to either release Petitioner immediately or hold a prompt bond hearing at which they must show changed circumstances.**

Some courts have determined that the appropriate relief for an immigration detainee held in violation of due process is the petitioner's immediate release from custody. *See, e.g., M.S.L.*, 2025 WL 2430267, at *15. "But it appears that the comfortable majority position—both historically and in recent weeks—is to instead require a bond hearing before an [Immigration Judge]." *Lopez-Arevelo*, 2025 WL 2691828, at *12 (collecting cases). Ordering a bond hearing is not an irrational remedy here, if only because Petitioner himself has requested it in the alternative. (Doc. 1 at 17-18.) Nevertheless, I again note that the DHS has already determined Petitioner does not pose a danger or a flight risk, and Respondents agree this has not changed. In these

circumstances, a bond hearing would likely result in Petitioner's release, and it would thus be at least equally valid—and arguably more efficient—for the Court to simply order Respondents to release Petitioner immediately.

Should the Court elect to order a bond hearing, it must also determine which party will bear the burden of proof at the hearing. Section 1226(a) is silent as to which party bears the burden of proof at a bond hearing.[8] The implementing regulations are also silent on this point, simply stating that both parties may present evidence. *See* 8 C.F.R. § 1003.19(d) ("The determination of the Immigration Judge as to custody status or bond may be based upon any information … that is presented to him or her by the alien or the Service."). The Tenth Circuit has yet to decide this issue, and the circuits that have done so are split. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–41 (1st Cir. 2021) (holding that government bears the burden of proving danger by clear and convincing evidence or flight risk by a preponderance of the evidence); *Velasco Lopez v. Decker*, 978 F.3d 842, 851, 855–57 (2d Cir. 2020) (holding that government bears the burden of proving danger or flight risk by clear and convincing evidence); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) (holding that detainee bears the burden of proof under § 1226(a)); *Miranda v. Garland*, 34 F.4th 338, 365–66 (4th Cir. 2022) (same); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1193– 94, 1203–14 (9th Cir. 2022) (agreeing with Third and Fourth Circuits' reasoning and holding that petitioner was not entitled to second bond hearing at which government would bear the burden of proof).

However, none of the appellate decisions placing the burden on the detainee involved circumstances like those at issue here, in which Petitioner has already convinced the DHS that he

---

[8] Section 1226(c)(4) states that a non-citizen may not be released unless, among other things, he "satisfies the Attorney General" that he is neither a flight risk nor a danger, but that subsection relates to the detention of non-citizens with criminal records and is not applicable here. *See* 8 U.S.C. § 1226(c)(1), (4).

is not a danger or a flight risk and circumstances have not changed in the two years that he resided and was gainfully employed in the United States. Moreover, many district courts, this Court among them, have "in recent days … order[ed] a bond hearing, at which the Government bears the burden of justifying the immigration habeas petitioner's continued detention by clear and convincing evidence" in analogous circumstances. *Lopez-Arevelo*, 2025 WL 2691828, at \*12-\*13 (collecting cases); *Salazar*, 2025 WL 2676729, at \*6-\*9. This Court's analysis in *Salazar* is particularly thorough, well-reasoned, and pertinent. *See* 2025 WL 2676729, at \*6-\*9. I therefore recommend that, if the Court elects to order a Section 1226(a) bond hearing, the Court follow *Salazar* and require the government to bear the burden of proving by clear and convincing evidence that circumstances have changed such that Petitioner is now a flight risk or a danger to persons or property.

### III.  CONCLUSION

In conclusion, in light of the DHS's September 2023 determination that Petitioner posed neither a danger nor a flight risk and Respondents' admission that circumstances have not changed since that time, I RECOMMEND that the Court GRANT Petitioner's Motion and enter a temporary restraining order and preliminary injunction directing all Respondents to immediately release Petitioner on his own recognizance subject to the terms of release in effect when he was re-detained in September 2025, pending resolution of his Petition. Alternatively, I RECOMMEND that the Court enter a temporary restraining order and preliminary injunction directing Respondents to provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a), and, in light of the fact that Petitioner has already been in custody for over two months, to hold the hearing within five (5) days of entry of the Court's order. At the hearing, Respondents should be required to either demonstrate

changed circumstances rendering Petitioner a danger or flight risk, or re-release Petitioner on his own recognizance subject to the terms of release in effect when he was re-detained.

If the Court elects to order Respondents to hold a bond hearing but Respondents fail or refuse to hold one by the time the Court-ordered deadline expires, I further RECOMMEND that the Court direct Respondents to immediately re-release Petitioner on his own recognizance subject to the terms of release in effect when he was re-detained, pending resolution of his Petition.

I also RECOMMEND that, whether the Court orders a bond hearing or immediate release, the Court direct the parties to file a status report no later than seven (7) days after entry of the Court's order. The status report should indicate Petitioner's then-current custodial status and location and, if a bond hearing has been ordered, whether it has been held and, if so, the outcome and the asserted bases therefor.

Finally, I RECOMMEND that Petitioner not be required to give security pursuant to Federal Rule of Civil Procedure 65(c) because Respondents are unlikely to sustain any net financial damages arising out of a TRO and preliminary injunction requiring a bond hearing or immediate release, even if they are ultimately found to have been wrongfully enjoined or restrained. Fed. R. Civ. P. 65(c).

_Kirtan Khalsa_
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**