IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BACHITAR SINGH,

    Petitioner,

v.   Civ. No. 25-1110 JB/KK

KRISTI NOEM, *et al.*,

    Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Before the Court is Petitioner Bachitar Singh's Verified Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. (Doc. 1). United States District Judge James O. Browning referred this case to me under 28 U.S.C. § 636(b) and *Virginia Beach Federal Savings & Loan Association v. Wood*, 901 F.2d 849 (10th Cir. 1990), "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 3 at 1.) Respondents filed a Response to the Petition on November 28, 2025 (Doc. 16). Having reviewed the parties' submissions, the record, and the relevant law, I RECOMMEND that the Court GRANT the Petition in part and order Respondents to hold a bond hearing within five (5) days of entry of the Court's order, and if they fail to do so, that the Court then Order Respondents to immediately release Petitioner.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Petitioner is a citizen of India who entered the United States without inspection on or about September 15, 2023. (*Id.* at 12 ¶ 38.) Shortly after his arrival, United States immigration officials arrested and detained him and served him with a Notice to Appear before an Immigration Judge,

---

[1] The following facts are taken from Petitioner's Verified Petition for Writ of Habeas Corpus (Doc. 1) ("Petition") which Respondents have not contested. *See* Doc. 16.

charging that he was inadmissible because he was present in the United States without admission or parole. (*Id.*) The following day, on September 16, 2023, the United States Department of Homeland Security ("DHS") released Petitioner on his own recognizance "[i]n accordance with section 236 of the Immigration and Nationality Act," *i.e.*, 8 U.S.C. § 1226. (*Id.*; Doc. 1-2 at 6.) Petitioner has resided in the United States since his release. (Doc. 1 at 12 ¶ 39.) He has no criminal history and has fully complied with all of the conditions of his release. (*Id.* at 12 ¶ 38.) On March 19, 2024, Petitioner timely filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.* at 12-13 ¶ 39.) Effective September 17, 2024, the United States granted Petitioner an Employment Authorization valid until September 16, 2029. (Doc. 1-2 at 8.) He subsequently obtained a commercial driver's license and employment as a commercial truck driver. (Doc. 1 at 12 ¶ 39) His asylum application remains pending (*Id.* at 13 ¶ 39, Doc. 19 at 2.)

On or about September 4, 2025, while he was employed driving a commercial vehicle, Petitioner traveled through a U.S. Border Patrol checkpoint in New Mexico, within the interior of the United States. (*Id.* at 13 ¶ 40.) At the checkpoint, immigration officials re-detained Petitioner despite the absence of any material change in circumstances that would have rendered him a danger or flight risk. (*Id.*) He has been held without bond since that time and is currently detained at the Otero County Processing Center in Chaparral, New Mexico. (*Id.* at 13 ¶ 41.)

On November 7, 2025, Petitioner filed a Verified Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, asking the Court to: (1) grant a writ of habeas corpus and declaratory relief holding that Petitioner's detention is unlawful and unconstitutional; (2) order Respondents to release Petitioner immediately or, alternatively, to provide him with a bond hearing under 8 U.S.C. § 1226(a) within five (5) days of the Court's order, at which the DHS bears the

burden to justify Petitioner's re-detention by showing, by clear and convincing evidence, materially changed circumstances rendering Petitioner a danger or flight risk; (3) order Respondents to refrain from transferring Petitioner to any facility outside the District of New Mexico while the writ is pending; and, (4) award Petitioner his reasonable attorney's fees, expenses, and costs. (Doc. 1 at 17-18.)

Contemporaneously with his Petition, Petitioner filed a Motion seeking a temporary restraining order ("TRO") and preliminary injunction. (Doc. 2.) I held a hearing on the Motion on November 20, 2025, at which counsel for Petitioner and for Respondents Noem, Bondi, Lyons, and De Anda-Ybarra appeared. At the hearing, counsel for the listed Respondents indicated, among other things, that his clients do not contest the factual allegations raised by Petitioner, and that he does not represent Respondent Castro but believes the defenses applicable to his clients apply equally to her. See also Doc. 16, FN 1 (asserting that "all arguments made on behalf of the [federal] Respondents apply with equal force to Warden Castro, as she is detaining the Petitioner at the request of the United States). On November 21, 2025, I issued proposed findings and recommended that the Court issue the requested relief. (Doc. 14 ("PFRD").) Petitioner's TRO/Preliminary Injunction Motion remains pending.

Because the Petition presents a purely legal question, I did not hold a hearing on the Petition. See 28 U.S.C. § 2243 ("Unless the application for the writ and the return present only issues of law the person to whom the writ is directed shall be required to produce at the hearing the body of the person detained.").

## ANALYSIS

The Petition presents an issue that has been addressed now in hundreds of cases across the country as a result of a DHS policy announced on July 8, 2025 and made binding on immigration

judges in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). Specifically, in *Yajure Hurtado*, the Board of Immigration Appeals ("BIA") concluded that non-citizens apprehended after already entering the United States are subject to mandatory detention because they remain "applicants for admission" within the meaning of Section 1225(b). *Id.* at 228. The BIA reasoned that "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an admission," nor does "being arrested pursuant to a warrant and placed into removal proceedings." *Id.* (quotation marks omitted). According to the BIA, to hold otherwise would reward non-citizens for evading apprehension and punish non-citizens who present themselves at ports of entry. *Id.*

Decisions of the BIA are not binding authority on the Court and the Supreme Court recently directed district courts to "exercise independent judgment in determining the meaning of statutory provisions" and "not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394, 413 (2024). For the reasons discussed below, I recommend that the Court reject *Yajure Hurtado*, and in line with the majority of District Courts nationwide, find that Petitioner is not subject to mandatory detention under Section 1225, but that instead Section 1226 governs his detention.

**1. Detention and Bond Hearing**

The Supreme Court has held that once a noncitizen is within the United States, "Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal." *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). As the Seventh Circuit has explained:

> That's because § 1225(a)(1) defines an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States."8 U.S.C. § 1225(a)(1). And while a noncitizen arrested in the Midwest might qualify as "an alien present in the United States who had not been admitted," § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an

4

> "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018) (emphasis added).

*Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *9 (7th Cir. Dec. 11, 2025).

8 U.S.C. § 1225(b), provides in pertinent part that, "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an *alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A) (emphases added). Section 1225 defines the term "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States … whether or not at a designated port of arrival," but does not define the term "alien seeking admission." 8 U.S.C. § 1225(a) (parenthesis omitted).

8 U.S.C. § 1226(a), in turn provides that

> [o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--(1) may continue to detain the arrested alien; and (2) may release the alien on … bond … or … conditional parole.

8 U.S.C. § 1226(a). To be released under Section 1226(a), a non-citizen "must demonstrate to the satisfaction of the [arresting immigration] officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). In addition, the non-citizen must not fall into any of the categories listed in "subsection (c)," which provides for the mandatory detention of certain "criminal aliens." 8 U.S.C. § 1226(c). In January 2025, the Laken Riley Act ("LRA") amended subsection (c) to add a new category of

non-citizens ineligible for release under Section 1226(a). LRA, Pub. L. No. 119-1 (Jan. 29, 2025). This new category includes non-citizens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes.[2] 8 U.S.C. §§ 1182(a)(6)(A)(i), 1226(c)(1)(E).

In *Jennings*, the Supreme Court explained that Section 1225(b) "applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Id.* at 297. In contrast, the Court explained that Section 1226 "applies to aliens already present in the United States." *Id.* at 303. The Court further noted that "Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings," and also "permits the Attorney General to release those aliens on bond." *Id.*

It is undisputed that when Petitioner was initially detained and released in September 2023, it was under 8 U.S.C. § 1226(a). Indeed, the Order of Release on Recognizance attached to the Petition specifically states that Petitioner was being released "[i]n accordance with Section 236 of the Immigration and Nationality Act"—*i.e.*, 8 U.S.C. § 1226. (Doc. 1-2 at 6.) Consistently, the Notice to Appear requiring Petitioner to appear for removal proceedings at a later date indicated that he was "an alien present in the United States who has not been admitted or paroled," rather than "an arriving alien." (*Id.* at 2.)

Moreover, logically, Petitioner had to have been detained and released under Section 1226(a) rather than Section 1225(b)(2)(A), because Section 1226(a) allows for a non-citizen to be released on his own recognizance, *i.e.*, on "conditional parole," pending removal proceedings,

---

[2] The crimes enumerated in Section 1226(c)(1)(E) are "burglary, theft, larceny, shoplifting, or assault of a law enforcement officer … or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E).

while Section 1225(b)(2)(A) provides that an alien seeking admission "shall" be detained unless an examining immigration officer determines that he is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. §§ 1225(b)(2)(A), 1226(a). And here, because Petitioner was placed in removal proceedings, it cannot reasonably be disputed that no examining immigration officer found Petitioner clearly and beyond a doubt entitled to be admitted prior to his release. It follows that Section 1226(a) is also the statutory provision that should be applied to Petitioner's re-detention in September 2025. Further, because Petitioner was initially released pursuant to Section 1226(a), he necessarily demonstrated to the arresting immigration officer's satisfaction that he was not a flight risk or a danger to persons or property. 8 C.F.R. § 236.1(c)(8); (*see also* Doc. 1 at 12 ¶ 13.)

In Respondents' view, Section 1225(b)(2)(A) applies to Petitioner, because all non-citizens who have not been lawfully admitted to the United States are "applicants for admission" even if they are already present and have been residing in the United States for years. However, Respondents' argument is without merit for the following six reasons. First, by the time he was re-detained, Petitioner had been residing in the United States for two years, and was thus an "alien[] already present in the United States," rather than an "alien[] seeking entry." *Jennings*, 583 U.S. at 297, 303. Under *Jennings*, this means that Section 1226, rather than Section 1225(b), applies.

Second, applying Section 1225(b)(2)(A) to persons like Petitioner would nullify the portion of the LRA that amends Section 1226 to require mandatory detention for non-citizens who (1) are deemed inadmissible because they are "present in the United States without being admitted or paroled" and (2) have been arrested for, charged with, or convicted of certain crimes. 8 U.S.C. §§ 1182(a)(6)(A)(1), 1226(c)(1)(E). If, as Respondents claim, Section 1225(b)(2)(A) required mandatory detention for *all* non-citizens deemed inadmissible because they are present in the

7

United States without being admitted or paroled, then Congress would have had no reason to amend Section 1226 to require mandatory detention for non-citizens who not only fall into that category but also have been convicted of enumerated crimes. *See, e.g.*, *Sampiao v. Hyde*, — F. Supp. 3d —, 2025 WL 2607924, at *8 (D. Mass. Sept. 9, 2025); *Loa Caballero v. Baltazar*, Civ. No. 25- 3120, 2025 WL 2977650, at *7 (D. Colo. Oct. 22, 2025). Respondents' position is therefore contrary to the presumption that, when Congress amends a statute, "it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995), *abrogation on other grounds recognized by Riley v. Bondi*, 606 U.S. 259, 276 (2025).

Third, Respondents' position would render the phrase "seeking admission" in Section 1225(b)(2)(A) "superfluous, violating one of the cardinal rules of statutory construction." *Castanon-Nava*, 2025 WL 3552514, at *9 (7th Cir. Dec. 11, 2025).

> Indeed, as the Supreme Court reminds us, if an interpretation of one provision "would render another provision superfluous, courts presume that interpretation is incorrect." *Bilski v. Kappos*, 561 U.S. 593, 607–08 (2010). And this presumption is "strongest when an interpretation would render superfluous another part of the same statutory scheme," as would be the case here. *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013).

*Id.*

If Section 1225(b)(2)(A) were to apply to *all* "applicants for admission," *i.e.*, those who "arrive[] in the United States" *and* those already "present in the United States who ha[ve] not been admitted," 8 U.S.C. § 1225(a)(1), then the statutory language limiting Section 1225(b)(2)(A) to applicants for admission who are also "alien[s] seeking admission" would be a nullity. 8 U.S.C. § 1225(b)(2)(A). "By reading a phrase out of the statute, Respondents' interpretation of § 1225 clearly violates the rule against surplusage." *Lopez Benitez*, 2025 WL 2371588, at *6; *see United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning.") (quotation marks omitted); *TRW Inc. v. Andrews*, 534

8

U.S. 19, 31 (2001) ("[A] statute ought … to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

Fourth and relatedly, Respondents' argument improperly equates the terms "applicant for admission" and "alien seeking admission" in Section 1225(b)(2)(A). Treating these phrases synonymously is contrary to the presumption that Congress intended different words or phrases to be accorded different meanings. *Lopez Benitez*, 2025 WL 2371588, at *6. Moreover, Respondents are correct that a non-citizen who, like Petitioner, has never lawfully entered the United States but has been present here for a substantial period of time is included in the statutory definition of the term "applicant for admission." 8 U.S.C. § 1225(a)(1). But individuals like Petitioner do not fall within the plain meaning of the phrase "alien seeking admission," because "admission" is defined as lawful "entry" into the United States, 8 U.S.C. § 1101(a)(13)(A), and such individuals "ha[ve] already entered the country." *Lopez Benitez*, 2025 WL 2371588, at *6 (quotation marks omitted). What individuals like Petitioner are seeking—in his case, via an application for asylum—is not lawful entry into the United States but rather "a lawful means of remaining" here. *Id.* at *7.

Fifth, Respondents' position expands Section 1225(b)(2)(A)'s reach "far beyond how it has been enforced historically, potentially subjecting millions more undocumented immigrants to mandatory detention, while simultaneously narrowing [Section] 1226(a) such that it would have extremely limited … application." *Id.* at *8. "[T]he line historically drawn between" Sections 1225(b)(2)(A) and 1226(a)—including by the DHS—and which "mak[es] sense of their text and the overall statutory scheme, is that [S]ection 1225 governs detention of non-citizens 'seeking admission into the country,' whereas [S]ection 1226 governs detention of non-citizens 'already in the country.'" *Id.* Respondents have not proffered any sufficiently persuasive reason to justify the radical shift they urge in the interpretation of the two statutes.

9

Sixth and finally, the vast majority of district courts to have considered the issue, have found that section 1226(a), rather than Section 1225(b)(2)(A), applies to non-citizens who did not lawfully enter the United States but who have been present in the United States for a significant period of time before the challenged detention. *See, e.g., Eugenio Melchor-Rios v. Ortiz*, et al., No. 25-CV-1055-WJ-GJF, 2025 WL 3764775, at *2 (Agreeing with the "overwhelming majority" that §1226 governs discretionary detention of individuals "who previously entered and currently reside in the United States"); *Velasquez Salazar v. Dedos*, No. 25-CV-00835-DHU-JMR, 2025 WL 2676729, at *4 (D.N.M. Sept. 17, 2025) (as to a petitioner that has been in the United States since the late 1980s, "[i]t is clear that § 1226, not § 1225, should have governed Petitioner's detention from the outset"); *Diaz-Cruz v. Dedos*, No. 25-CV-01117-MLG-JMR, 2025 WL 3628517, at *2 (D.N.M. Dec. 12, 2025) (collecting cases and holding that "[l]ike the overwhelming majority of courts who have considered the matter, this Court agrees that § 1226(a) governs [petitioner's] detention and, therefore, Diaz-Cruz is entitled to an individualized bond hearing"); *Gonzalez Ramos v. Dedos*, No. 1:25-CV-00975-MLG-KRS, 2025 WL 3653928, at *4 (D.N.M. Dec. 17, 2025) ("The Court concludes Gonzalez Ramos's detention is governed by § 1226(a). Gonzalez Ramos entered the United States in 1998 and has lived here since. He therefore cannot be considered an applicant 'seeking admission' pursuant to § 1225(b)(2)(A), as he has lived here for decades."); *Pu Sacvin v. De Anda-Ybarra*, No. 25-CV-01031-KG-JFR, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) ("Noncitizens who entered the country years earlier are not considered to be 'seeking admission,' and therefore fall under § 1226 rather than § 1225(b)(2)(A)." *Molina Ochoa v. Noem*, No. 25-CV-00881-JB-LF, 2025 WL 3125846, at *7 (D.N.M. Nov. 7, 2025) (collecting cases); *Loa Caballero*, 2025 WL 2977650, at *4-*7; *Buenrostro-Mendez v. Bondi*, Civ. No. 25-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025); *Sampiao*, 2025 WL 2607924, at

*7-*8; *Mosqueda v. Noem*, Civ. No. 25-2304, 2025 WL 2591530, at *4-*5 (C.D. Cal. Sept. 8, 2025).

Of particular note here, courts have reached this conclusion in habeas cases involving non-citizens who, like Petitioner, were apprehended and released under Section 1226(a) years ago but have recently been re-detained without a bond hearing. *See, e.g., Romero v. Hyde*, — F. Supp. 3d —, 2025 WL 2403827, at *9-*13 (D. Mass. Aug. 19, 2025); *Jimenez v. FCI Berlin, Warden*, Civ. No. 25-326, 2025 WL 2639390, at *7-*10 (D.N.H. Sept. 8, 2025); *Lopez Benitez*, 2025 WL 2371588, at *5-*9; *Rosado v. Figueroa*, Civ. No. 25-2157, 2025 WL 2337099, at *8-*11 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, Civ. No. 25-2157, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025).

For all of these reasons, Section 1225's mandatory detention provision does not apply because Petitioner has already effected an entry into the United States and has lived here for two years.[3] I thus recommend that the Court find that 8 U.S.C. § 1226 governs Petitioner's detention.

---

[3] In light of *In the Matter of Yajure Hurtado*, I am confounded by Respondents' argument that the Petition should be denied because Mr. Singh has not requested a bond hearing and has thus failed to exhaust administrative remedies. However, to the extent that the Court wishes to consider this argument, I refer to Judge Fashing's analysis in *Molina Ochoa v. Noem*, No. 1:25-CV-00881-JB-LF, 2025 WL 3125846 (D.N.M. Nov. 7, 2025), with which I agree, and urge the Court to adopt:

> Petitioners ordinarily are required to exhaust administrative remedies before seeking a writ under § 2241, but exhaustion is not a statutory requirement. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *see also Soberanes v. Comfort*, 388 F.3d 1305, 1310–11 (10th Cir. 2004) (Although appealing to the BIA normally is required to obtain subsequent judicial review, exhaustion deficiencies do not affect habeas jurisdiction over challenges to immigration detention.). As another court within the Tenth Circuit recently explained in the context of an immigration habeas matter, "exhaustion is typically nonjurisdictional, and courts treat a rule as jurisdictional only if Congress clearly states that it is." *Salvador F.-G. v. Noem*, No. 25-CV-0243-CVE-MTS, 2025 WL 1669356, at *6 (N.D. Ok. June 12, 2025) (citation modified) (quoting *Santos-Zacaria v. Garland*, 598 U.S. 411, 416–17, 143 S.Ct. 1103, 215 L.Ed.2d 375 (2023)). Section 1252(d)(1) of title 8, United States Code, does impose an administrative exhaustion requirement, but only as to challenges to final orders of removal and not to challenges of pre-removal detention. *See id.*; *see also Gonzales v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004) (explaining that administrative exhaustion applies to challenges of final orders of removal but not to challenges to preliminary custody or bond determinations). Respondents concede that the "exhaustion requirement is prudential, rather than

11

jurisdictional, for habeas claims." Doc. 5 at 12 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017)). And where exhaustion is not jurisdictional, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), *superseded by statute on other grounds as stated in Woodford v. Ngo*, 548 U.S. 81, 84–85, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *see also L.G. v. Choate*, 744 F. Supp. 3d 1172, 1181 (D. Colo. 2024) ("When Congress does not require exhaustion in the statute then the district court has discretion to decide if administrative exhaustion is required."); *Lopez-Arevelo v. Ripa*, No. EP-25cv337, 2025 WL 2691828 at *6 (W.D. Tex. Sept. 22, 2025) ("To wait, indefinitely, for a ruling on that appeal would be inappropriate because it would exacerbate [the petitioner's] alleged constitutional injury—detention without a bond hearing."); *Lopez v. Barr*, 458 F. Supp. 3d 171, 176 (W.D.N.Y. 20202) ("[C]ourts can excuse a failure to exhaust if the case presents a substantial constitutional question.").

Even if administrative exhaustion were required, the Tenth Circuit has recognized a "narrow exception to the exhaustion requirement" where "a petitioner can demonstrate that exhaustion is futile." *Garza*, 596 F.3d at 1203–04; *see also Carr v. Saul*, 593 U.S. 83, 93, 141 S.Ct. 1352, 209 L.Ed.2d 376 (2021) ("It makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested."). In *Garza*, for example, the Tenth Circuit rejected a petitioner's argument that appeal through the Bureau of Prisons ("BOP") was futile, reasoning that the BOP memoranda that the petitioner relied on did "not reflect any policy of categorical denial." 596 F.3d at 1204.

The BIA's decision in *Yajure Hurtado* appears to categorically deny relief to noncitizens who, like petitioner, are apprehended after residing in the country and who seek to challenge an immigration judge's determination that they are subject to mandatory detention under § 1225(b). *See Mosqueda*, 2025 WL 2591530, at *1, *7 (explaining that, in publishing *Hurtado*, the BIA "adopted the legal interpretation of the new DHS policy" that categorically "considers anyone arrested within the United States and charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) to be an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)"). Respondents focus on the timeliness of Petitioner's appeal, or lack thereof, rather than assert that the BIA would not have categorically denied him relief. *See* Doc. 5 at 12–13, 15–16. Respondents argue that the exhaustion exemption should not apply because *Yajure Hurtado* was decided after Petitioner's period to appeal the immigration judge's determination had expired, but they cite no authority for their contention that the futility exemption only applies if a petitioner timely appeals. *See* Doc. 5 at 16. Respondents' argument also assumes that, had Petitioner timely appealed, the BIA would have rendered a decision in his case before it published *Yajure Hurtado*. Assuming, for the sake of argument, that Petitioner did file a valid notice of appeal on August 22, 2025—an earlier date than when Petitioner's 30-day appeal period expired, Doc. 5 at 16—the BIA would have had only fourteen days to review his case before it published its opinion in *Yajure Hurtado*. For reference, *Yajure Hurtado* was published 140 days after the challenged custody determination in that case and thirty-seven days after the July 30, 2025, order that Petitioner is challenging.[7] Respondents' argument also assumes that the BIA would have reached a different conclusion as to Petitioner's case than it did in *Yajure Hurtado*. *See Mosqueda [v. Noem]*, 2025 WL 2591530, at *7 [(C.D. Cal. Sept. 8, 2025)](explaining that the court was "not convinced that administrative review would allow BIA to correct its own mistakes" and that until "BIA no longer applies a policy that likely violates federal law, the circumstances do not present a need for requiring prudential exhaustion").

There may be circumstances where a petitioner's failure to [exhaust administrative remedies] should foreclose application of the futility exception, but the facts here do not justify such a conclusion. . . . there is no reasonable possibility that the BIA would not have applied *Yajure Hurtado* to Petitioner's case. I therefore recommend that the Court exercise its "sound judicial discretion," *see McCarthy*, 503 U.S. at 144,

12

Given the length of time that Petitioner has already been detained without a bond hearing, and for reasons further discussed in my PFRD on the TRO/Preliminary Injunction Motion (Doc. 14), the Court may consider ordering Petitioner's immediate release as he has requested. However, the majority of judges in this district who have ruled in similar cases have ordered a prompt bond hearing rather than the petitioner's immediate release. Thus, and to avoid further delaying a ruling on the Petition, in line with those cases, I recommend that the Court Order Respondents to give Petitioner a bond hearing pursuant to Section 1226(a) within five days of the Court's Order. If Petitioner is not afforded a bond hearing within that time, I recommend that the Court order his immediate release.

2. **Attorney's Fees**

Petitioner also requests that he be awarded reasonable costs and attorney's fees. (Doc. 1 at 18.) The Tenth Circuit has recently made clear that the Equal Access to Justice Act ("EAJA") "unambiguously authorize[s] fees in habeas actions challenging immigration detention." *Daley v. Ceja*, 158 F.4th 1152 (10th Cir. 2025). EAJA provides that a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. §

---

112 S.Ct. 1081, and find that Petitioner was not required to exhaust his administrative remedies before seeking habeas relief.

*Molina Ochoa v. Noem*, No. 1:25-CV-00881-JB-LF, 2025 WL 3125846, at *9–10 (D.N.M. Nov. 7, 2025).

2412(d)(1)(A). Consistent with this provision, I recommend that Petitioner be permitted to file a motion for EAJA fees, and that briefing on that motion proceed according to the deadlines in Local Rule 7.4.

## RECOMMENDATION

I RECOMMEND that the Court GRANT in part the Verified Petition for Writ of Habeas Corpus as follows:

1. Respondent must provide Petitioner a bond hearing under Section 1226(a) within five days of the Court's Order.

2. If Respondents do not comply, Petitioner shall be immediately released.

3. Respondents shall file a status report within six days of the Court's Order as to the status of the bond hearing or release; and

4. Petitioner may file a motion for EAJA fees and briefing on the motion shall proceed according to the deadlines in Local Rule 7.4.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**